UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| RICHARD M. CONSTANTINE, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 08-253-ART |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| ELMO GREER & SONS, LLC, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The claims in this case arise from an automobile accident that occurred near a road construction site on Interstate 75 in Laurel County, Kentucky. Richard M. Constantine ("Constantine'), the individual injured, and his employer, U.S. Express, Inc. (collectively "the plaintiffs") sued Defendant Elmo Greer & Sons, LLC ("Greer"), the contractor on the construction project. The plaintiffs allege in their amended complaint that Greer was negligent and, thus, caused the accident. *See* R. 6.[1]

On November 11, 2009, Greer filed a motion for summary judgment, R. 29, the plaintiffs filed a response, R. 30, and Greer filed a reply, R. 32. For the reasons set forth below, the Court grants Greer's motion for summary judgment.

### I. BACKGROUND

On August 7, 2006, at around noon, an intoxicated driver caused a fatal accident near mile-marker 36 on Interstate 75 resulting in traffic on the interstate to come to a standstill for

---

[1] Plaintiff U.S. Express, Inc., seeks to recoup the worker's compensation benefits it paid as a result of Constantine's injuries. R. 6 ¶13-16.

three hours. R. 29, Ex. 10 at 2; R. 30 at 14.[2] Later that afternoon, Constantine was driving a tractor-trailer up a cresting hill and collided with another car stuck in stopped traffic. R. 29 at 1. Constantine's accident occurred on the interstate at mile-marker 38.9—before the beginning of the construction project. R. 30 at 8. Constantine suffered a severe brain injury, and as a result, he has no recollection of the accident. *Id.*

***The Contract.*** Greer won a contract with the Commonwealth of Kentucky Transportation Cabinet ("the Cabinet") to begin resurfacing five miles of Interstate 75 in August of 2006—the project extended from mile-markers 29 to 34. R. 29, Ex. 3, Contract 4 of 4 at 52-55. The Cabinet drafted a Traffic Control Plan ("TCP") that was included in both the contract and the bid materials. R. 29, Ex. 3, Contract 2 of 4 at 63-69. Greer did not participate in the drafting of the TCP. The contract also specified that all work Greer performed had to be in compliance with the Department of Highway's Standard Specifications for Road and Bridge Construction ("DOH Standards"). R. 29, Ex. 7. The DOH Standards require the contractor to comply with the Manual on Uniform Traffic Control ("MUTCD") published by the Federal Highway Administration. *Id.*; 23 C.F.R. § 655. The contract included a plan for safety signs on the interstate that Greer summarized in its brief as follows:

| MILE-MARKER | SIGN READS |
|---|---|
| 39.381 | "XXXXX" LANE CLOSED 6 MILES AHEAD |
| 37.543 | "XXXXX" LANE CLOSED 4 MILES AHEAD |
| 37 | ROAD WORK 3 MILES AHEAD |
| 36 | ROAD WORK 2 MILES AHEAD |
| 35 | ROAD WORK 1 MILE AHEAD |

---

[2] The deceased motorist in that accident is not a party in this case.

|  |  |
|---|---|
| 34.833 | REDUCE SPEED AHEAD |
| 34.667 | 55 MPH |
| 34.5 | ROAD WORK ½ MILE AHEAD |
| 34.470 | "XXXXX" LANE CLOSED 1 MILE AHEAD |
| 34.284 | WARNING DOUBLE FINE IN WORK ZONE ROAD WORK 1500 FEET AHEAD |
| 34.00 | ROAD WORK NEXT 5 MILES |

R. 29 at 6; *see also* R. 29, Ex. 6. These signs were in the TCP but were not the only signs that Greer placed on the interstate the day of Constantine's accident.[3]

After noticing the traffic buildup on August 7, 2006, the Greer project foreman, Johnny Evans, contacted the Cabinet's engineer on the project, Daniel Hoffman, to inquire about placing additional signs on the interstate to alert travelers about the traffic backup approaching mile-marker 38. R. 36, Evans Dep. at 15. In his deposition, Hoffman confirmed that he received a call from a Greer employee—although Hoffman was not certain which Greer employee made the call. R. 46, Hoffman Dep. at 111. Hoffman also testified that he gave Greer the approval to put up additional signs. *See id.* at 113 ("Well, I mean, they called me and asked me, and then I said okay."). Hoffman concurred that the signs should be somewhere further up the interstate from mile-marker 39. *Id.* at 115. Evans instructed Greer employees to put up two additional signs stating "caution, caution, caution, stopped or slow traffic ahead" at mile-marker 41. R. 36, Evans Dep. at 16. The plaintiffs' negligence claims arise out of these additional signs Greer installed on August 7, 2006.

---

[3] As discussed below, the plaintiffs argue that there is a issue of material fact as to whether Greer actually added additional signs to alert motorists of the danger caused by the traffic backup.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As the moving party, Greer bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element on each of the plaintiffs' claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The plaintiffs, as the nonmoving party, must then present sufficient evidence from which a jury could reasonably find for them. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, this Court must draw all reasonable inferences in favor of the plaintiffs. *See Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

This is a case brought in federal court pursuant to diversity jurisdiction. The parties agree that Kentucky law applies in this case.

## III. ANALYSIS

Greer has moved for summary judgment on all of the claims raised by the plaintiffs. R. 29. In response, the plaintiffs narrow the scope of the case by making clear that their claims are

not based on any actions taken by Greer before the fatal accident on August 7, 2006. *See* R. 30 at 2 ("Plaintiffs have no quarrel with the fundamental design of the TCP and/or Greer's maintenance of the signs designated in the TCP. This case is about Greer's obligation, conduct and decision-making in response to an emergency situation on August 7, 2006. . . .").

Instead, the plaintiffs focus solely on the actions—or inaction—of Greer after the fatal accident with respect to the additional signs Greer put up on the interstate. *Id.* The plaintiffs claim: (1) "Greer's actions failed to warn the public of the very real danger that [Constantine] would confront after cresting a hill with a fully loaded tractor-trailer and a wall of stopped traffic ahead" and (2), in the alternative, the signs Greer installed on the day of the accident gave "inconsistent and misleading warnings to motorists leading them to believe that the danger was six (6) miles away–when in fact, the danger was concealed just beyond a hillcrest." *Id.*

In a negligence claim under Kentucky law, the elements of the cause of action are (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury (which includes causation). *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). The question of duty is a matter of law for the court to determine and the issue of breach is a question of fact for the jury. *Id.* at 89. Because the plaintiffs have failed to show the existence of a material issue of fact that Greer breached a duty owed to Constantine, Greer is entitled to summary judgment.

### 1. Duty

Greer was not required to take any action after the fatal accident that occurred at noon on

August 7, 2006.[4] Under Kentucky law, "[i]t is the duty of a road contractor to provide and maintain adequate and appropriate notice of hazardous conditions arising from the highway construction work." *State Contracting Stone Co. v. Fulkerson*, 288 S.W.2d 43, 46 (Ky. 1956).[5] Here, the hazardous condition arose from an intoxicated driver that struck a vehicle slowing because of the traffic ahead. R. 29, Ex. 10 at 2. Authorities charged the driver with manslaughter and driving under the influence. *Id.* This accident occurred near mile-marker 36—approximately two miles from the beginning of Greer's construction project, which began at mile marker 34. Consequently, Greer's construction project did not cause the traffic hazard.

Also, there was no contractual duty requiring Greer to act. Even though the plaintiffs state that "Greer cannot dispute that, as the contractor on this project, it was required to respond, and even deviate from the TCP if necessary in the event of an emergency," R. 30 at 3, they fail to cite any provision of the contract that required Greer to do so. *See id.* at 3-4. The contract—consisting of the TCP, DOH Standards, and MUTCD as incorporated and described above—contains no such provision *requiring* Greer to act.

---

[4] In another case against Greer arising out of the same contract between Greer and the Commonwealth of Kentucky, the court reached this same conclusion. *See Fisher v. Elmo Greer and Sons, LLC*, No. 07-CV-364, 2009 WL 3161400 (E.D. Ky. Sept. 24, 2009). The accident in *Fisher* occurred on October 16, 2006—after the accident here. In that case, the court also concluded that the "Plaintiffs have cited no provision of the contract requiring Elmo Greer to implement additional signs at the construction site beyond those required by the state or requiring Elmo Greer to suggest changes to the TCP." *Id.* at * 8.

[5] Kentucky law makes complete sense on this issue. It would be inappropriate for courts to hold road contractors responsible for accidents unrelated to the construction project. In other words, here the initial accident causing the hazard had nothing to do with the construction project and everything to do with an intoxicated driver ultimately charged with DUI and manslaughter for his actions.

MUTCD § 1A.07 states: "The responsibility of the design, placement, operation, maintenance, and uniformity of traffic control devices shall rest with the public agency or the official having jurisdiction." R. 29, Ex. 4 at 4. Further, MUTCD § 1A.08 states:

> Traffic control devices, advertisements, announcement, and other signs or messages within the highway right-of-way shall be placed only as authorized by a public authority or the official having jurisdiction, for the purpose of regulating, warning or guiding traffic.
>
> When the public agency or other official having jurisdiction over a street or highway has granted proper authority, others such as contractors. . . . shall be permitted to install temporary traffic control devices in temporary traffic control zones.

*Id.* at 5. The contract merely allows Greer to respond to an emergency. It does not require a response. *See* DOH Standards § 112.03.01:

> Notify the Engineer before erecting traffic control devices, changing the location of devices in place, or beginning a traffic operation of any kind, except in case of an emergency. In the case of an emergency, the Engineer may direct immediate procurement of safety and warning devices as necessary to safeguard traffic. Notify the Engineer in writing a minimum of one week in advance, when it is necessary for the Department to do work such as detour signing outside the limits of the project.

R. 29, Ex. 7 at 18-19. The plaintiffs state that "section 112.03.01 provides that '**in the case of an emergency**' the contractor is not required to 'notify the Engineer before erecting traffic control devices, changing the location of devices in place, or beginning a traffic operation of any kind.'" R. 30 at 3 (emphasis in original). This provision, however, does not require Greer to take any action. Further, the plaintiffs fail to address the following sentence in § 112.03.01 that states: "In the case of an emergency, the Engineer may direct immediate procurement of safety and warning devices as necessary to safeguard traffic." R. 29, Ex. 7 at 19, DOH Standards §

112.03.01. This sentence gives the discretion and authority to place additional signs to the Cabinet's engineer, Hoffman. Further, DOH Standard § 112.03.01(G) states: "Do not begin work until the Engineer has approved all signing." R. 29, Ex. 7 at 20. The plaintiffs also cite provisions of the MUTCD in support of their argument that Greer was required to warn travelers. *See* R. 30 at 4 (citing MUTCD §§ 6I.01, 6I.02, 6F.55). None of these MUTCD provisions, however, require Greer to act. Thus, while Greer could react to an emergency under these provisions of the contract, it did not have an affirmative contractual duty to do so.

      The plaintiffs also rely on the testimonies of Greer's expert, Joseph Blaschke, and Hoffman, the Cabinet's engineer responsible for the project, in support of their argument that Greer was required to act. *Id.* Neither of these depositions, however, supports the plaintiffs' argument that Greer was required to warn travelers on the interstate of the danger posed by the traffic backup. In response to the question "[c]an a contractor deviate from a traffic control plan in an emergency situation?" Blaschke responded: "Yes, they *can*. It *depends* on what the circumstances are, though." R. 40, Blaschke Dep. at 100 (emphasis added). Likewise, Hoffman did not testify that Greer was required to respond to the emergency in the pages cited in the plaintiffs' response. *See* R. 30 at 3 (citing R. 46, Hoffman Dep. at 143, 191-193). When asked, "[i]s it something that you would expect in an emergency situation for your contractor to be paying attention to the traffic queues, and if things need—signs needed to be changed to properly warn, would that be something that the contractor would need to do?" Hoffman responded, "it just depends on the situation." R. 46, Hoffman Dep. at 192-93. Accordingly, neither the contract nor the testimony of Hoffman or Blaschke show that Greer had a duty to act.

**2. Breach**

Greer did, however, respond to the traffic situation on August 7, 2006, by installing additional warning signs after contacting Hoffman. Even if the plaintiffs are correct that Greer assumed a duty to Constantine by doing so (and, therefore, acted outside the contract), the plaintiffs fail to cite to any evidence that Greer was negligent in placing these additional signs on the interstate. Indeed, there is no evidence that the additional signs Greer put up in any way caused or increased the risk of injury to Constantine.

Greer claims it responded in accordance with the provisions of the contract, *see* R. 29 at 12-21. If Greer is correct, it is entitled to sovereign immunity and could not have breached any duty that it owed to the plaintiffs. *See City of Louisville v. Padgett*, 457 S.W.2d 485, 488 (Ky. 1970) (A contractor with the Commonwealth of Kentucky "who performs his contract in conformity with the plans and specifications of the contract will not be held liable for injury to the public in the absence of a negligent . . . or a wilful tortious act.") (citing *Hunt-Forbes Const. Co. v. Robinson*, 12 S.W.2d 303 (Ky. 1928); *Taylor v. Westerfield*, 26 S.W.2d 557 (Ky. 1930)).[6] The plaintiffs allege that Greer assumed a duty outside the contract, and thus, Kentucky sovereign immunity law does not apply. *See* R. 30 at 15-20. If the plaintiffs are correct, Greer is not

---

[6] For an example of a Kentucky case involving a road contractor that was not entitled to sovereign immunity s*ee Gilbert v. Murray Paving Co., Inc.*, 147 S.W.3d 736 (Ky. Ct. App. 2003). In that case involving a road resurfacing project, the contract called for a drop off point of one inch from the pavement to the unpaved dirt. The court held that there was evidence the contractor allowed the drop off point to exceed five inches. *Id.* at 741. The TCP also called for the contractor to place warning devices for pavement edges between two and four inches in height where traffic was not supposed to cross. *Id.* at 742. There was also evidence in the record that the contractor did not place these warning devices. *Id.*

entitled to sovereign immunity and traditional negligence law applies.

Whether Greer acted within the scope of the contract or assumed a duty by acting outside of the contract requires an analysis of the contract and what actions Hoffman, the Cabinet's engineer, approved Greer to undertake after the fatal accident. The parties dedicate significant portions of their briefs to this issue. An analysis and resolution of this argument, however, is not necessary here. Even if the plaintiffs are correct and Greer acted outside the scope of the contract and assumed a duty, Greer is still entitled to summary judgment because the plaintiffs have failed to introduce *any* evidence that Greer breached any duty by acting negligently in placing the additional signs at mile-marker 41. *See Celotex*, 477 U.S. at 322.

After noticing the traffic buildup caused by the first accident, Evans, a Greer project foreman, contacted Hoffman to inquire about placing additional signs on the interstate to alert travelers to the traffic backup approaching mile-marker 38. R. 36, Evans Dep. at 15. Hoffman approved Greer's idea to place additional signs. R. 46, Hoffman Dep. at 113. Evans instructed other Greer employees to put up two additional signs stating "caution, caution, caution, stopped or slow traffic ahead" at mile marker 41. R. 36, Evans Dep. at 16.

The plaintiffs allege that these additional signs at marker 41 were "inconsistent, confusing, and misleading." R. 30 at 6. In support, the plaintiffs rely on the deposition of Larry Clem, an eyewitness to the accident. *See* R. 30 at 7-10. Clem, however, admits that he never even saw the "caution, caution, caution" signs that Greer added the day of the accidents at mile-marker 41 to warn motorists of the traffic backup. *See* R. 30 at 10; R. 42, Clem Dep. at 67-68 ("Q: [B]efore you saw the sign about saying the lane closures ahead five miles, did you see any signs before

10

that? A: No, sir.").[7] Clem's testimony focuses on the signs included in the TCP—not the signs added by Greer after the fatal accident. Accordingly, Clem's testimony is not relevant to support the argument that the additional signs Greer placed were misleading because Clem admits he did not see them.[8]

The plaintiffs' response does not cite any other evidence to show that Greer's placement of additional signs at mile-marker 41 breached any duty. In their memorandum, the plaintiffs state the following concerning the "caution, caution, caution" signs Greer added:

> Whether or not Greer acted quick enough in placing the signs, whether or not a correct message was displayed, whether or not there were inconsistent messages, whether or not the signs were placed properly on the Interstate are all clear questions for the jury to answer since it is apparent from the testimony that Greer in fact either had a duty or assumed a duty when it requested permission to warn the traveling public of the danger in the construction zone due to the fatal accident.

---

[7] There appears to be a minor error in Clem's deposition. There was not a sign notifying motorists of a lane closure five miles ahead. The questioner was likely referring to the sign near mile-marker 39 warning motorists of the lane closure six miles ahead.

[8] Based on this testimony, the plaintiffs claim there is an issue of fact as to whether Greer even actually placed the additional signs at all after the first accident. *See* R. 30 at 10. This is a bizarre argument at best and wholly inconsistent with their claim that the signs placed were confusing and misleading. R. 30 at 6. In any event, Clem's claim that he did not "see" the signs is not the equivalent of them not being there. For example, a party cannot create a material issue of fact simply by having someone testify that they did not "see" the signs. Rather, someone would have to testify affirmatively that they were not there. On a highway, it is unfortunately common for someone not to pay attention to every sign. In every "missing sign" case, you can always find someone that will say they did not "see" the sign. Here, however, it would not have been difficult to determine whether signs were put up. The plaintiffs could have simply asked who put the signs up during discovery and then deposed them and then pointed it out in their pleadings. In any event, this argument remains inconsistent with their main focus that the signs are misleading. Finally, since Greer did not have a duty to put up the signs, if Clem is correct that there were not signs, then that is another ground to grant summary judgment; they could not have been misleading if they did not exist.

11

R. 30 at 20. While the plaintiffs make these conclusory arguments, they cite no evidence in the record to support any of them. *See Celotex*, 477 U.S. at 322 ("the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Indeed, the plaintiffs never even mention or cite their own expert, Herman Hill, in their response. *See* R. 33, Hill Dep. The plaintiffs rely on the deposition of Larry Clem; however, Clem's testimony is not relevant to these claims because he denied even seeing the additional "caution, caution, caution" signs at mile-marker 41. *See* R. 42, Clem Dep. at 67-68. Accordingly, the plaintiffs have failed to show a material issue of fact pertaining to Greer's negligence in placing additional warning signs at mile marker 41. *See Celotex*, 477 U.S. at 323-24 ("[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses").

What is apparent from the plaintiffs' response memorandum is that the negligence claims related to the "misleading" signs do not really pertain to the signs that Greer added on August 7, 2006, at mile-marker 41. Instead, the plaintiffs' claims relate to the sign in the TCP at mile marker 39.381 that stated "LANE CLOSED 6 MILES AHEAD." Any claims related to the actual signs included in the TCP are barred by Kentucky's law on sovereign immunity. *See Gilbert*, 147 S.W.3d at 740-41.

Constantine's accident occurred more than two miles past the additional "caution, caution, caution" signs Greer placed at mile-marker 41. Constantine ran into stopped traffic at mile marker 38.9—approximately .48 miles after he passed the "LANE CLOSED 6 MILES AHEAD"

12

sign. The plaintiffs claim that "passing motorists were given the inconsistent, conflicting and/or misleading impression that any trouble ahead was still several miles away while the very real danger actually lay just seconds away." R. 30 at 7; *see also id.* at 8-9. This argument is supported by Clem's deposition. *See* R. 41, Clem Dep. at 47 ("the sign had should have been reading: Be prepared to stop, instead of you got five miles to think about it."). Further, the testimony of the plaintiffs' expert, Herman Hill, supports the idea that the plaintiffs' negligence claims are actually based on the allegedly misleading "LANE CLOSED 6 MILES AHEAD" sign—not the signs added at mile marker 41. *See* R. 33, Hill, Dep. at 72-73 ("Q: So your specific criticism is not that the two additional boards were put out that said caution, caution, caution, stopped, or slow traffic ahead but in the fact that the six-mile sign should have been either turned off or the message on that six-mile sign changed?  A:  Right.").[9]

The "LANE CLOSED 6 MILES AHEAD" sign was part of the TCP. Greer did not have the authority to change the signs in the TCP without permission or guidance from Hoffman, the Cabinet's engineer, to do so. *See* R. 29, Ex. 7 at 18, DOH Standard § 112.03.01 ("The Department will consider a deviation from the TCP. Submit the proposed changes in the TCP to the Engineer in writing. If the Department approves the alternate TCP, the Engineer will remit approval to the Contractor, in writing."). The depositions of Clem (that the plaintiffs cited in their

---

[9]This sign indicating that the lane was not closed until 6 miles ahead was not inaccurate. Rather, it seems what the plaintiffs really wanted was for Greer to place additional signs warning the drivers about the accident two miles before Greer's construction site or change the signs they had. Greer, however, did not contribute to causing this danger in any way. The fact that they took steps to warn motorists does not make them liable or make them a guarantor of everyone's safety. At the end of the day, this is a very sad case, but not one that Greer can be or should be held responsible for.

13

response), R. 41, and the deposition of Hill (that the plaintiffs did not cite), R. 33, contradict the plaintiffs' statement in their brief that they "have no quarrel with the fundamental design of the TCP and/or Greer's maintenance of the signs designated in the TCP." R. 30 at 2.

Greer, however, cannot be held liable for following the TCP and installing the "LANE CLOSED 6 MILES AHEAD" sign under Kentucky's law on sovereign immunity. *See Gilbert*, 147 S.W.3d at 740-41 ("The contractors work is not the engineering job of laying out the project but is merely in doing what it is instructed to do. So long as it does this work as it is instructed to do by its superior in a workman like manner, *not negligently*, then the contractor is not liable." (citing *Padgett*, 457 S.W.2d at 488-90 (quoting *Wood v. Foster & Creighton Co.*, 235 S.W.2d 1 (Tn. 1950))). Greer merely followed the Cabinet's orders in placing this sign at mile marker 39.381 in accordance with the TCP. In doing so, Greer cannot be liable for the decision to place the "LANE CLOSED 6 MILES AHEAD" sign at that location on the interstate. Nor can Greer be liable for the message designated on the sign. Accordingly, the plaintiffs' claim here fails under both *Pagdett* and *Gilbert*.

## IV. CONCLUSION

Neither Kentucky negligence law nor its contract with the Commonwealth required Greer to warn motorists of the danger posed by the traffic backup after a fatal accident on the interstate. Greer, however, chose to contact the Cabinet's engineer to seek permission to put up additional warning signs. After receiving permission to do so, Greer placed additional signs to caution motorists of the dangers ahead. The plaintiffs have failed to introduce any evidence that Greer installed these additional warning signs in a negligent manner. Accordingly, it is **ORDERED**

that Greer's motion for summary judgment, R. 29, is **GRANTED**.  This case is **STRICKEN** from the record and Judgement will be entered concurrent with this Memorandum Opinion and Order.

 This the 30th day of December, 2009.

Signed By:
*Amul R. Thapar*  AT
United States District Judge